779 F.2d 793
 54 USLW 2380, Fed. Sec. L. Rep. P 92,392
 LONG ISLAND LIGHTING COMPANY, Plaintiff-Appellant,
v.
Maurice BARBASH, Norman E. Blankman, Nora Bredes, Elaine
Benson, Leon Campo, Bill Chalaff, Frazer Dougherty, Jack
Hohenberger, Dan Gluck, Leonard Goldschmidt, Lou Grasso,
Joseph Kaufman, Nancy Kelly, Irving Like, Sharon Luscombe,
William Marran, William Massino, Edward McGovern, Arthur
Metzger, Deborah Perry, Nathan Pitt, Clair Siegal, Alex
Sneddon, Judith Sneddon, Robert Snyder, Tom Twomey, Dave
Willmott, John W. Matthews and Island Insulation Corp.,
Defendants-Appellees.
 No. 658, Docket 85-7890.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 3, 1985.
Decided Dec. 6, 1985.
Filed Dec. 13, 1985.
 
 Michael Lesch, New York City (John G. Nicolich, Shea & Gould, New York City, of counsel), for plaintiff-appellant Long Island Lighting Co.
 Thomas J. Schwarz, New York City (Jeremy A. Berman, Patrick J. Foye, Richard S. Simon, Cecelia M. Dempsey, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for defendants-appellees John W. Matthews and Island Insulation Corp.
 Eugene R. Scheiman, New York City (Thomas E. Albright, Baer Marks & Upham, New York City, Irving Like, Reilly Like & Schneider, Babylon, N.Y., of counsel), for all defendants-appellees except John W. Matthews and Island Insulation Corp.
 Before LUMBARD, CARDAMONE, and WINTER, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 A Long Island utility furnishing that area with power has scheduled a stockholders meeting for Thursday December 12, 1985. It has been embroiled in public controversy over its construction of the Shoreham Nuclear Power Plant and adverse publicity intensified recently because of extended loss of service to customers arising from damages to the transmission system caused by Hurricane Gloria.
 
 
 2
 In this setting, the company, believing that several groups had begun to solicit proxies during October in anticipation of the upcoming stockholders meeting, brought suit to enjoin them. The district court judge first slowed the matter by adjourning the case until the fall election was over, and then speeded it up by directing discovery to be completed in one day. Such handling only demonstrates again that in the law it is wise--even when expeditious action is required--to make haste slowly.
 
 
 3
 Long Island Lighting Company (LILCO) brings this expedited appeal from a November 8, 1985 order of the United States District Court for the Eastern District of New York (Weinstein, Ch.J.) that granted summary judgment dismissing LILCO's complaint against the Steering Committee of Citizens to Replace LILCO (the Citizens Committee), John W. Matthews and Island Insulation Corp. LILCO brought this action to enjoin defendants' alleged violations of Sec. 14(a) of the Securities Exchange Act of 1934 and Rules 14a-9, 17 C.F.R. Sec. 240.14a-9 and 14a-11, 17 C.F.R. 240.14a-11, promulgated under that statute, that govern proxy solicitations. The complaint alleges that defendants have committed such violations by publishing a false and misleading advertisement in connection with a special meeting of LILCO's shareholders scheduled for the purpose of electing a new LILCO Board of Directors. For the reasons explained below, this matter is remanded to the district court.
 
 
 4
 * Plaintiff LILCO is a New York electric company serving Nassau and Suffolk Counties on Long Island, New York. Its common and preferred stocks are registered in accordance with Section 12(b) of the Securities Exchange Act and are traded on the New York Stock Exchange. Defendant John W. Matthews was an unsuccessful candidate for Nassau County Executive in the election held November 5, 1985. During the campaign he strongly opposed LILCO and its operation of the Shoreham Nuclear Power Plant. As an owner of 100 shares of LILCO's preferred stock and a manager of an additional 100 shares of common stock held by his company, Island Insulation Corp., Matthews initiated a proxy contest for the purpose of electing a majority of LILCO's Board of Directors. The stated purpose of the other defendants, the Citizens Committee, is to replace LILCO with a municipally owned utility company. The Citizens Committee was formed prior to this litigation, in order to challenge LILCO's construction of the Shoreham atomic energy plant, its service and its rates.
 
 
 5
 LILCO filed its complaint on October 21, 1985 alleging that defendants published a materially false and misleading advertisement in Newsday, a Long Island newspaper, and ran false and misleading radio advertisements throughout the New York area. The ads criticized LILCO's management and encouraged citizens to replace LILCO with a state-run company. The complaint sought an injunction against further alleged solicitation of LILCO shareholders until the claimed false and misleading statements had been corrected and a Schedule 14B had been filed. The district court granted LILCO an expedited hearing on its appeal from Magistrate Scheindlin's decision denying expedited discovery and also set for hearing defendants' motions to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).
 
 
 6
 On October 30, 1985 Chief Judge Weinstein adjourned the hearing until November 6 in order to prevent interference with Matthews' political campaign. The district court directed the defendants to bring the requested documents to the hearing on that date and told Matthews and others whom LILCO wished to depose to be available for such discovery. At the November 6 hearing the district judge directed LILCO's counsel to question Matthews under oath and overruled counsel's objections that he was unprepared to examine Matthews and that he had no prior opportunity to review the defendants' documents. The trial court also refused LILCO's request to question other defendants and told counsel that it must limit its questions to the alleged "conspiracy" between Matthews and the other defendants. Two days after this hearing the district court issued its Preliminary Memorandum Dismissing Complaint. Treating defendant's motion to dismiss as one for summary judgment, the district court granted summary judgment in favor of defendants on the ground that the proxy rules did not apply to the advertisements. This appeal followed.
 
 II
 
 7
 LILCO argues first, that in view of the necessity in every case to determine whether a communication constitutes a "solicitation" under the proxy rates, the district court abused its discretion by limiting LILCO's opportunity for discovery. Second, LILCO asserts that the district court erroneously held that communications to shareholders through general and indirect publications can in no circumstances constitute "solicitations" under the proxy rules. Finally, LILCO contests the district court's view that this construction of the proxy rules is necessary to render them compatible with the First Amendment.
 
 A. Undue Limitation of Discovery
 
 8
 Although a district court has considerable latitude in determining the scope of discovery, it abuses its discretion when the discovery is so limited as to affect a party's substantial rights. Goldman v. Checker Taxi Company, 325 F.2d 853, 856 (7th Cir.1963); see Roelding v. Anderson, 103 U.S.App.D.C. 237, 257 F.2d 615, 619 (1958). Here the district court abused its discretion when it cut off discovery by suddenly ordering LILCO to examine Matthews under oath--without notice or an opportunity to review the documents that had just been produced. Further, the district court improperly circumscribed counsel's questions solely to conversations between Matthews and the other defendants when it denied counsel's requests to question anyone other than Matthews. Under these circumstances, LILCO was denied a meaningful opportunity to establish that the subject advertisement was a solicitation within the meaning of 14(a). See Sargent v. Genesco, Inc., 492 F.2d 750, 768 (5th Cir.1978).
 
 
 9
 Grants of summary judgment on an incomplete record are generally disfavored, and this is particularly true where we conclude that the district court's discretion over the fact-finding process has been tainted by an erroneous view of the law. See, e.g., Schlesinger Investment Partnership v. Fluor Corp., 671 F.2d 739 (2d Cir.1982) (reversing grant of summary judgment where discovery incomplete); Landmark Land Co. v. Sprague, 701 F.2d 1065 (2d Cir.1983) (same). Therefore, LILCO is entitled to further discovery for the purpose of attempting to establish that the defendants' advertisement was, in the language of Rule 14a-1, 17 C.F.R. Sec. 240.14a-1(f)(1)(iii), a "communication to security holders under circumstances calculated to result in the procurement, withholding or revocation of a proxy."
 
 B. Rules Governing Proxy Solicitation
 
 10
 In our view the district court further erred in holding that the proxy rules cannot cover communications appearing in publications of general circulation and that are indirectly addressed to shareholders. Regulation 14(a) of the Securities Exchange Act governs the solicitation of proxies with respect to the securities of publicly held companies, with enumerated exceptions set forth in the rules. 17 C.F.R. Sec. 240.14a-1 et seq. Proxy rules promulgated by the Securities Exchange Commission (SEC) regulate as proxy solicitations:(1) any request for a proxy whether or not accompanied by or included in a form of proxy;
 
 
 11
 (2) any request to execute or not to execute, or to revoke, a proxy; or
 
 
 12
 (3) the furnishing of a form of proxy or other communications to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy.
 
 
 13
 Rule 14a-1, 17 C.F.R. Sec. 240.14a-1.
 
 
 14
 These rules apply not only to direct requests to furnish, revoke or withhold proxies, but also to communications which may indirectly accomplish such a result or constitute a step in a chain of communications designed ultimately to accomplish such a result. Securities and Exchange Commission v. Okin, 132 F.2d 784, 786 (2d Cir.1943) (letter to shareholders was within the scope of the proxy rules where it was alleged that it was "a step in a campaign whose purpose it was to get [defendant] elected an officer of the company; it was to pave the way for an out-and-out solicitation later.")
 
 
 15
 The question in every case is whether the challenged communication, seen in the totality of circumstances, is "reasonably calculated" to influence the shareholders' votes. See id.; Trans. World Corp. v. Odyssey Partners, 561 F.Supp. 1311, 1320 (S.D.N.Y.1983). Determination of the purpose of the communication depends upon the nature of the communication and the circumstances under which it was distributed. Brown v. Chicago, Rock Island & Pacific R.R., 328 F.2d 122 (7th Cir.1964). In Studebaker Corporation v. Gittlin, 360 F.2d 692, 694 (2d Cir.1966), the defendant solicited authorizations from shareholders to obtain a shareholder list in the course of a proxy fight. Because the authorizations were sought only for the purpose of seeking future proxies, the court held that the authorizations were also covered by the proxy rules. Id. at 696.
 
 
 16
 Deciding whether a communication is a proxy solicitation does not depend upon whether it is "targeted directly" at shareholders. See Rule 14a-6(g), 17 C.F.R. Sec. 240.14a-6(g) (requiring that solicitations in the form of "speeches, press releases, and television scripts" be filed with the SEC). As the SEC correctly notes in its amicus brief, it would "permit easy evasion of the proxy rules" to exempt all general and indirect communications to shareholders, and this is true whether or not the communication purports to address matters of "public interest." See Medical Comm. for Human Rights v. SEC, 432 F.2d 659 (D.C.Cir.1970) (applying proxy rules to shareholder's proposal to prohibit company from manufacturing napalm during the Vietnam War). The SEC's authority to regulate proxy solicitations has traditionally extended into matters of public interest.
 
 C. First Amendment Concerns
 
 17
 The extent to which the activities of the defendants amount to a solicitation of the proxies of shareholders of LILCO may determine whether or not their actions are protected by the First Amendment. Therefore, it is unnecessary to express an opinion on any claim of privilege under the First Amendment until there has been a determination of the "solicitation" issue as a result of further proceedings in the district court.
 
 III
 
 18
 Because discovery here was so abbreviated and the district court's determination was predicated on a mistaken notion of what constitutes a proxy solicitation and on the relationship between the proxy rules and the First Amendment, the case must be remanded to the district court. LILCO represented during oral argument before us that--if given the opportunity--its discovery could be swiftly completed. We suggest that on remand the district court limit LILCO's discovery to an appropriate period. Even this expedited schedule will obviously conflict with the scheduled stockholders meeting of December 12. LILCO advised the Court by letter dated November 22, 1985 that after reasonable discovery it also wanted an opportunity to move for a preliminary injunction. Thus, in light of its request the meeting should probably be postponed and, if necessary, stayed by order of the district court. Finally, this panel retains jurisdiction over this matter to the extent that after the district court has had an opportunity to conduct its proceedings and rule on the merits, we will address the issues raised on appeal.
 
 
 19
 In consideration of the time constraints, the mandate of the Court shall issue forthwith.
 
 WINTER, Circuit Judge, dissenting:
 
 20
 In order to avoid a serious first amendment issue, I would construe the federal regulations governing the solicitation of proxies as inapplicable to the newspaper advertisement in question. See Lowe v. Securities and Exchange Commission, --- U.S. ----, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985). Further discovery would then be unnecessary, and I therefore respectfully dissent.
 
 
 21
 * First, the facts. The Long Island Lighting Company (LILCO) is a state-regulated public utility. It is currently the subject of controversy in its service area concerning the safety of a nuclear power plant, the cost of constructing that plant, the level of electricity rates, and service difficulties resulting from a recent hurricane.
 
 
 22
 One of LILCO's principal antagonists is John W. Matthews, a defendant in this litigation. During the fall of 1985, Matthews was the Democratic candidate for County Executive in Nassau County and appears to have focused much of his campaign upon LILCO issues. During this campaign, Matthews purchased a sufficient number of shares of LILCO's preferred stock to force a special shareholders' meeting pursuant to its Charter. On October 9, 1985, he made a demand for such a meeting. The next day, a corporation that is controlled by Matthews and owns LILCO common stock asked to inspect and copy LILCO's list of common stockholders. The stated purpose of this request was to enable it and Matthews to communicate with LILCO shareholders with regard to the election of LILCO's Board and to whether LILCO should be sold to Nassau and Suffolk Counties.
 
 
 23
 Another group of antagonists are the other individual defendants, who constitute a group styled "Citizens to Replace LILCO." On October 15 the Citizens to Replace LILCO published the newspaper advertisement that has given rise to the present litigation. That advertisement accused LILCO of mismanagement and of attempting to pass through to ratepayers needless costs relating to construction of the nuclear power plant. It also noted that a publicly owned power authority would not have to pay dividends to stockholders. The advertisement argued strenuously that ratepayers would be better off if a Long Island Power Authority were created to replace LILCO as a supplier of power. It asked readers to join the Committee and to give it financial support.
 
 
 24
 LILCO's complaint alleges that Matthews and the defendant members of the Citizens to Replace LILCO acted in a concerted fashion to publish this advertisement in order to influence the exercise of proxies by LILCO shareholders. It alleges that the advertisement was false and misleading in numerous respects relating to alleged advantages for ratepayers in the creation of a public power authority. Claiming a violation of federal proxy regulations, LILCO asked for an injunction prohibiting the defendants from soliciting proxies until they make appropriate filings with the Securities and Exchange Commission and correct the false and misleading statements in the ad. The relief requested would prevent further publication of the ad.
 
 
 25
 After the truncated discovery described by my colleagues, the district judge denied the injunction and granted summary judgment for the defendants. He stated that in his view: "Even if defendants did conspire to influence the outcome of the proxy fight ... this fact would be irrelevant." The case as framed on appeal thus raises two issues. First is the question, fully briefed and argued by the parties and amici, whether the federal regulation of proxy materials applies to newspaper advertisements such as the one at issue and, if so, whether those regulations so applied do not violate the first amendment. Second is the question whether, assuming that the proxy regulations do apply and pass constitutional muster, the case should be remanded for further discovery.
 
 
 26
 It is clear, of course, that the second issue--the need for further discovery--cannot be determined until the relationship of the proxy regulations to the first amendment has been resolved. If, for example, the first amendment protects such advertisements regardless of the motive of those who purchase them, further discovery would be irrelevant. My colleagues, asserting that "the district court's determination was predicated on a mistaken notion ... on the relationship between the proxy rules and the First Amendment," believe such motives are relevant. I respectfully disagree.
 
 II
 
 27
 The content of the Committee's advertisement is of critical importance. First, it is on its face addressed solely to the public. Second, it makes no mention either of proxies or of the shareholders' meeting demanded by Matthews. Third, the issues the ad addresses are quintessentially matters of public political debate, namely, whether a public power authority would provide cheaper electricity than LILCO. Claims of LILCO mismanagement are discussed solely in the context of their effect on its customers. Finally, the ad was published in the middle of an election campaign in which LILCO's future was an issue.
 
 
 28
 On these facts, therefore, LILCO's claim raises a constitutional issue of the first magnitude. It asks nothing less than that a federal court act as a censor, empowered to determine the truth or falsity of the ad's claims about the merits of public power and to enjoin further advocacy containing false claims. We need not resolve this constitutional issue, however.
 
 
 29
 Where advertisements are critical of corporate conduct but are facially directed solely to the public, in no way mention the exercise of proxies, and debate only matters of conceded public concern, I would construe federal proxy regulation as inapplicable, whatever the motive of those who purchase them. This position, which is strongly suggested by relevant case law, see infra, maximizes public debate, avoids embroiling the federal judiciary in determining the rightness or wrongness of conflicting positions on public policy, and does not significantly impede achievement of Congress' goal that shareholders exercise proxy rights on the basis of accurate information.
 
 
 30
 It is of course true that LILCO shareholders may be concerned about public allegations of mismanagement on LILCO's part. However, shareholders are most unlikely to be misled into thinking that advertisements of this kind, particularly when purchased in the name of a committee so obviously disinterested in the return on investment to LILCO's shareholders, are either necessarily accurate or authoritative sources of information about LILCO's management. Such advertisements, which in no way suggest internal reforms shareholders might bring about through the exercise of their proxies, are sheer political advocacy and would be so recognized by any reasonable shareholder.
 
 
 31
 To be sure, the fact that a corporation has become a target of political advocacy might well justify unease among shareholders. No one seriously asserts, however, that the right to criticize corporate behavior as a matter of public concern diminishes as shareholders' meetings become imminent.
 
 III
 
 32
 Potential conflicts between first amendment values and federal regulatory goals have arisen before and have been resolved by the Supreme Court by construing the particular regulatory scheme not to reach activities which clearly implicate the first amendment. These decisions pay heed to the precepts counselling against unnecessary adjudication of constitutional issues. See Ashwander v. TVA, 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); United States v. Curcio, 712 F.2d 1532, 1541 n. 14 (2d Cir.1983). "Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." Ashwander, 297 U.S. at 347, 56 S.Ct. at 483.
 
 
 33
 This very year, in the Lowe case, the Supreme Court construed the Investment Advisors Act not to reach non-personalized investment advice in an investment newsletter even where the source of that advice was a person barred from being a professional investment advisor because of past criminal conduct. In Lowe, the congressional purpose of protecting the public from investment advice by persons determined to be untrustworthy was far more deeply implicated by the newsletter than are the purposes of federal proxy regulation implicated by the advertisement at issue in the present case. Lowe actually involved the giving of investment advice by one barred from the profession by the Investment Advisors' Act, whereas the relationship of the advertisement in this case to the exercise of shareholder proxies is on its face very attenuated.
 
 
 34
 Similarly, in Eastern Railroad Conference v. Noerr, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the Supreme Court construed the Sherman Act not to reach appeals to the public designed to further a political campaign for a legally protected monopoly even where those appeals were false in their content as well as in their purported source.[1] Again, the congressional purpose of preventing monopolization was more deeply implicated by the activities in Noerr than is in the congressional purpose of proxy regulation implicated by the advertisement in the present case.
 
 
 35
 Applying Lowe and Noerr to the present case, I believe the advertisement in question is not subject to federal proxy regulation regardless of Matthews' participation in its publication or the motives of its authors. Further discovery is irrelevant in my view,[2] and I would affirm.
 
 
 
 [1]
 Unethical or deceptive conduct is not protected under Noerr's progeny when it occurs in the context of adjudicatory tribunals. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); Landmarks Holding Corp. v. Bermant, 664 F.2d 891 (2d Cir.1981); Litton Systems Inc. v. American Telephone and Telegraph Co., 700 F.2d 785 (2d Cir.1983)
 
 
 [2]
 Such discovery itself may raise a constitutional issue to the extent that it enables one political antagonist to inquire into the associational activities of its enemies. NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)