902 F.2d 38
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 BANK OF GUAM, a Guam corporation, Plaintiff-Appellee,
v.
Mark V. PANGILINAN; Mark V. Pangilinan, Jr.; Marks Motors,
Inc., a Guam corporation; Mark's Insurance Underwriters,
Inc., a Guam corporation; Ace Hardware, a Guam corporation,
Defendants-Appellants.
 No. 89-15060.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 10, 1990.
Decided April 30, 1990.
 Before FARRIS, PREGERSON and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Mark Pangilinan appeals the district court's finding of contempt and the resulting sanction of the prevailing party's fees and costs. The district court held that Pangilinan had issued proxy solicitations without complying with the Securities Exchange Act of 1934 and the applicable regulations, in violation of a prior consent decree, and therefore was in contempt. The district court awarded the plaintiff, the Bank of Guam, all of the attorney's fees and costs associated with prosecuting the contempt suit, totalling $489,817. Pangilinan appeals both the finding of contempt and the fees award. We affirm.
 
 I. THE VIOLATION OF THE INJUNCTION
 
 3
 Pangilinan primarily challenges the district court's finding that he violated the 1983 injunction. The injunction prohibited Pangilinan from soliciting any proxies, as defined by federal law, without first complying with sections 13 and 14 of the 1934 Act and filing the appropriate forms with the FDIC, the agency that regulates proxies for the Bank.
 
 A. The Alleged Lack of Interstate Commerce
 
 4
 Pangilinan first argues that he could not have violated the court order because he did not issue a proxy solicitation in interstate commerce, as defined by section 14(a) of the 1934 Act.[1] He bases this argument on the fact that the alleged proxy solicitations were published in The Guam Tribune, which Pangilinan claims is not an instrumentality of interstate commerce, and thus falls beyond the coverage of the 1934 Act. We reject this argument. The newspaper's connection to interstate commerce is irrelevant to the question of whether Pangilinan's proxies were covered by section 14(a). Section 14(a) does not require that a proxy solicitation be issued by use of the mails or interstate commerce; use of these means, "or otherwise"--meaning any proxy solicitation--is covered by the 1934 Act. See Loss, Fundamentals of Securities Regulations, 457 (2d ed. 1988) ("The means by which the solicitation is made is of no consequence."). Since 1942 the SEC has not required use of the mails or interstate commerce to find a proxy solicitation regulated by section 14(a). See Sec.Ex.Act.Rel. 3347, p 4 (1942) ("The exemption heretofore granted corporations making proxy solicitations without use of the mails or interstate commerce is abolished."). Nor do the FDIC regulations, which govern proxy solicitations for the Bank, require the use of the mails or interstate commerce. See 12 C.F.R. Secs. 335.102(ff)(3), 335.202. See also Schoenbaum v. Firstbrook, 405 F.2d 200, 206 (2d Cir.1968), cert. denied, 395 U.S. 906 (1969) (the 1934 Act has extraterritorial application, affecting sales of foreign stock in a foreign country between foreign buyers and sellers).
 
 
 5
 B. The Advertisements as Proxy Solicitations
 
 
 6
 Pangilinan next challenges the district court's finding that the advertisements were proxy solicitations.[2] In determining whether something is a proxy solicitation, "[t]he question in every case is whether the challenged communication, seen in the totality of the circumstances, is 'reasonably calculated' to influence the shareholders' votes." Long Island Lighting Co. v. Barbash, 779 F.2d 793, 796 (2d Cir.1985) (citations omitted). Even though the advertisements did not strictly solicit a proxy, the district court properly found that they were solicitations, because they were "part of a continuous plan ending in solicitation and which prepare the way for its success." SEC v. Okin, 132 F.2d 784, 786 (2d Cir.1943).
 
 
 7
 Pangilinan claims that the district court erred in this finding because the court stated that it did "not consider[ ] the articles for the purpose of determining whether any of ... them are proxy solicitations." Pangilinan reads too much into this isolated statement. In finding that the advertisements were proxy solicitations, the district court specifically relied on the "combination of advertisements and articles published in juxtaposition." The district court did consider the articles, it simply did not decide whether they too were solicitations.
 
 
 8
 Pangilinan's underlying claim, that "his sole purpose was to encourage public interest in passage of a bill before the Guam legislature and to inform the public about questionable transactions and taxes not paid by the Bank," is not supported by the record. Promotion of Guam Senate Bill 716 was only part of the purpose of the advertisements. They also urged shareholders to attend an alternate meeting, discouraged them from attending the regular meeting, attacked the incumbent directors for incompetence and dishonesty, and urged the election of a new director who would represent the minority shareholders.
 
 
 9
 Finally, Pangilinan argues that he could not have been soliciting proxies because, given the fact that the incumbent Board controlled the majority of the voting shares of the Bank, it would have been futile to do so. The futility of this solicitation does not overcome the strong evidence that Pangilinan was soliciting proxies. Whether he was wise to do so is not relevant.
 
 C. The FDIC Filings
 
 10
 Pangilinan also challenges the district court's finding that he violated the 1983 judgment by failing to file the required forms with the FDIC. The record indicates that Pangilinan did not file Forms F-5 and F-11, as required by 12 C.F.R. Sec. 335.204(a) and Rule 13(d) of the 1934 Act, 15 U.S.C. 78m(d). The district court's decision that Pangilinan violated the injunction is not clearly erroneous.
 
 II. ATTORNEY'S FEES
 
 11
 Pangilinan also challenges the amount of the attorney's fees and costs that were awarded as excessive. Pangilinan waived his right to argue the costs claim, because he did not raise these arguments before the district court. This court will not consider an argument raised for the first time on appeal in the absence of special circumstances, not present here. See Bolker v C.I.R., 760 F.2d 1039, 1042 (9th Cir.1985). Pangilinan did properly raise the claim that the district court awarded excessive attorney's fees. He argues that the case was "overlawyered," that the district court improperly found that the case was complicated, and that the district court improperly took account of the fact that the case was tried in Guam. These claims are not supported by the record. The district court did not abuse its discretion in the fee award.
 
 III. FRIVOLOUSNESS OF THE APPEAL
 
 12
 The Bank claims that this is a frivolous appeal and that it should be awarded the fees and costs associated with litigating before this court, pursuant to 28 U.S.C. Sec. 1912 and Fed.R.App.P. 38. "An appeal is considered frivolous in this circuit when the result is obvious, or the appellant's arguments of error are wholly without merit." Taylor v. Sentry Life Ins. Co., 729 F.2d 652, 656 (9th Cir.1984) (citations ommitted). Pangilinan's claims, though not well founded, fail (but slightly) to rise to the level of frivolousness.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Section 14(a) of the 1934 Act, 15 U.S.C. Sec. 78n(a), provides, in pertinent part:
 It shall be unlawful for any person, by the use of the mails or by any other means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention [of the Commission's rules] ... to solicit any proxy ... in respect of any security ... registered pursuant to Section 12 of this title.
 (emphasis added).
 
 
 [2]
 The governing regulation defines a solicitation as:
 (1) Any request for a proxy whether or not accompanied by or included in a form of proxy;
 (2) Any request to execute or not to execute, or to revoke, a proxy; or
 (3) The furnishing of a form of proxy or other communication to security holders under circumstances reasonably calculated to result in the procurement, withholding, or revocation of a proxy....
 
 
 [12]
 C.F.R. Sec. 335.102(ff)