Dwight E. WININGER, On Behalf of Himself and All Others Similarly Situated, Plaintiff,

v.

SI MANAGEMENT L.P., a Limited Partnership; Synthetic Management G.P., a.k.a., SI Management G.P., a General Partnership; Leonard Chill; Jon P. Beckman; W. Wayne Freed; Ralph Kenner; W. Gardner Wright; Chill Investments, Inc., a Delaware corporation; Beckman Investments, Inc., a Delaware corporation; Freed Investments, Inc., a Delaware corporation; Kenner Investments, Inc., a Delaware corporation; and Wright Investments, Inc., a Delaware corporation, Defendants.

No. C 97–01622 CW.

United States District Court, N.D. California.

Aug. 4, 1997.

Alex J. Luchenitser, The Mills Law Firm, Greenbrae, CA.

George H. Brown, Heller Ehrman White & McAuliffe, Palo Alto, CA.

Robert W. Mills, The Mills Firm, Greenbrae, CA.

Bruce D. Angiolillo, Simpson Thacher & Bartlett, New York City.

John K. Kim, Simpson Thacher & Bartlett, New York City.

## ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

WILKEN, District Judge.

Plaintiff Dwight E. Wininger moves for a preliminary injunction. Defendants SI Management L.P., *et al.,* oppose the motion. The matter was heard on July 25, 1997. Having considered all of the papers filed by the parties and oral argument on the motion, the Court DENIES Plaintiff's motion.

### BACKGROUND

Plaintiff is a limited partner in Synthetic Industries, L.P. ("the Limited Partnership"), a Delaware limited partnership. The Limited Partnership owns approximately two-thirds of Synthetic Industries, Inc. ("the Company").[1] Defendants are SI Management L.P. ("the General Partner"), the sole general partner of the Limited Partnership;

---

1. Neither the Limited Partnership nor the Company are parties to this lawsuit.

Synthetic Management G.P., the sole general partner of SI Management L.P.; Chill Investments, Inc., the managing general partner of Synthetic Management G.P.; Leonard Chill, the President of the Company and sole director and stockholder of Chill Investments; and the other general partners of Synthetic Management G.P.

On March 21, 1997, Defendant Leonard Chill sent a letter on behalf of the General Partner to the limited partners of the Limited Partnership. Wininger Decl., Ex. A. It announced the General Partner's plan to dissolve the Limited Partnership and to provide the limited partners cash or stock in the Company as compensation for their partnership units. The letter stated that the General Partner believed that the dissolution plan would satisfy the "diverse needs [of the limited partners] in a fair, equitable and tax efficient manner." It further stated that the terms of the dissolution plan "are intended to distribute the [Limited] Partnership's assets to you in a manner that is in all of your best interests." It assured the limited partners that the plan would "provide that the General Partner will receive only amounts to which it is clearly entitled under the [Limited] Partnership Agreement and the General Partner will not receive any fees or other compensation for carrying out the Plan." The letter described the general outlines of the dissolution plan, but stated that details remained to be worked out and that a proxy statement would be distributed once the details were resolved.

On May 1, 1997, Plaintiff filed this suit in United States District Court, alleging that the March 21 letter was a proxy solicitation which should have been filed with the Securities and Exchange Commission ("SEC"). He also contends that Defendants violated SEC regulations concerning the disclosure of material facts relating to proxy solicitations. On May 23, he filed the present motion for a preliminary injunction, urging the Court to enjoin Defendants from conducting any further solicitation concerning the proposed dissolution of the Limited Partnership until De-

fendants (1) file a proxy statement with the SEC and send it to all limited partners, (2) file the March 21 letter with the SEC, and (3) fully disclose all facts material to the March 21 letter. Plaintiff specified eighteen categories of information that he regards as material to the proxy solicitation.

On June 9, 1997, Synthetic Industries, Inc., filed a joint proxy statement and prospectus with the SEC. Brown Decl., Ex. E. The same day, it released a press statement announcing the registration with the SEC. Luchenitser Decl., Ex. G. The press release briefly described the main features of the proposed dissolution plan. The release also quoted Leonard Chill as declaring that "we are delivering on our promise to enhance liquidity for limited partners ... while increasing the public float for common shareholders in a non-dilutive manner." [2]

Defendants now urge the Court to deny Plaintiff's motion for a preliminary injunction, arguing that the March 21 letter was not a solicitation within the meaning of the SEC regulations and that, even if it were, the filing of the proxy statement with the SEC moots any claims regarding the March 21 letter. Plaintiff counters that the filing of the proxy statement did not address all of his concerns and that the press release announcing the filing of the proxy statement was itself in violation of SEC proxy regulations.

## DISCUSSION

### I. Legal Standard for Preliminary Injunctions

"The function of a preliminary injunction is to maintain the *status quo ante litem* pending determination of the action on the merits." *Washington Capitols Basketball Club v. Barry*, 419 F.2d 472, 476 (9th Cir.1969). The moving party is entitled to preliminary injunction if it establishes either:

(1) a combination of probable success on the merits and the possibility of irreparable harm, or

---

**2.** A version of the press release was filed with the SEC, but it did not include Defendant Chill's statement concerning the dissolution plan. *Compare* Brown Supp. Decl. Ex. E (version of press release filed with SEC) *with* Luchenitser Decl.

Ex. G (version of the press release available on the internet). The version available on the internet also included additional material describing the Company and advising readers that the registration statement had not yet become effective.

(2) that there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor.

*Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987); *California Cooler v. Loretto Winery,* 774 F.2d 1451, 1455 (9th Cir.1985); *see also Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir.1975); *County of Alameda v. Weinberger,* 520 F.2d 344, 349 (9th Cir.1975).

■ The test is a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Rodeo Collection,* 812 F.2d at 1217 (quoting *San Diego Comm. Against Registration and the Draft v. Governing Board of Grossmont Union High School Dist.,* 790 F.2d 1471, 1473 n. 3 (9th Cir.1986)). To overcome a weak showing of merit, a plaintiff seeking a preliminary injunction must make a very strong showing that the balance of hardships is in its favor. *Rodeo Collection,* 812 F.2d at 1217.

## II. Likelihood of Success

### A. Proxy Solicitation

Title 15 U.S.C. § 78n(a) prohibits the solicitation of proxies in a manner which contravenes SEC regulations. SEC regulations prohibit proxy solicitations "unless each person solicited is concurrently furnished or has previously been furnished" with a publicly-filed proxy statement containing specified information. 17 C.F.R. § 240.14a–3(a).

#### 1. The March 21 Letter

The parties dispute whether Defendants' March 21 letter constituted a proxy solicitation. The SEC defines "solicitation" as:

(i) Any request for a proxy whether or not accompanied by or included in a form of proxy;

(ii) Any request to execute or not to execute, or to revoke, a proxy; or

(iii) The furnishing of a form of proxy or other communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy.

17 C.F.R. § 240.14a–1(*l*)(1). The SEC definition thus applies not only to direct requests to execute or revoke proxies, but also to "communications which may indirectly accomplish such a result or constitute a step in a chain of communications designed ultimately to accomplish such a result." *Long Island Lighting Co. v. Barbash,* 779 F.2d 793, 796 (2d Cir.1985); *Kass v. Arden–Mayfair, Inc.,* 431 F.Supp. 1037, 1046 (C.D.Cal.1977). The Court must consider the totality of the circumstances when evaluating whether a communication is reasonably calculated to influence shareholders' decisions concerning the execution of proxies. *Long Island Lighting,* 779 F.2d at 796.

Relatively little case law has been published concerning when a communication "constitutes a step in a chain of communications" designed to influence securities holders' decisions concerning the execution of proxies. Broadly construed, the chain of communications rule could apply to almost any communication from management concerning significant changes in a business organization's structure that may eventually require securities holders' approval. Citing the market's need for neutral, timely information about significant structural changes, courts have held that communications that are strictly informational do not constitute proxy solicitations within the meaning of SEC regulations. *See Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 601 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Capital Real Estate Investors Tax Exempt Fund Limited Partnership v. Schwartzberg,* 929 F.Supp. 105, 111 (S.D.N.Y.1996).

Courts have differed, however, about how to determine when management communications concerning organizational changes constitute a link in a chain of communications designed to convince securities holders to execute proxies. In *Smallwood,* the board of directors of a corporation sent a letter to its shareholders describing a proposed merger that the board had just approved. The letter also expressed the board's belief that the merger was in the shareholders' best interests. The court cited two factors justifying its conclusion that the letter was not a solicitation. The court first noted that no shareholder meeting had been scheduled and that therefore shareholders were not facing an imminent decision on whether to execute proxies concerning the proposed merger.

The court also observed that the statement in support of the merger was relatively innocuous, in that it simply conveyed the board's belief that its action was in the shareholders' best interests. Given that the members of the board had a fiduciary duty to act in what they considered to be the shareholders' best interests, the *Smallwood* court regarded the board's comment in support of the merger as a statement of the obvious. 489 F.2d at 601.

In *Capital Real Estate*, the court emphasized the need for providing individuals with clear guidance on when communications constitute solicitations for proxies. 929 F.Supp. at 112. The court articulated a rule that communications that neutrally convey information but do not characterize any particular action as beneficial or harmful are not proxy solicitations. The court held, however, that communications that "reasonably portray the transaction in a favorable light—in other words, [that] present[ ] the transaction in a manner objectively likely to predispose security holders toward or against it" are solicitations and therefore must comply with the SEC's proxy rules. *Id.* at 114.

Under *Capital Real Estate*, the March 21 letter was a proxy solicitation because it advocated on behalf of the dissolution plan, describing it as a flexible plan that would serve the limited partners' interests and that would not favor the General Partner at the limited partners' expense. Applying the *Smallwood* test results in a closer call. *Smallwood* and other courts that have applied a similar approach have emphasized the timing of the communications. *See Smallwood*, 489 F.2d at 601; *Kass*, 431 F.Supp. at 1046. This factor works in Defendants' favor because the letter was sent more than two months prior to the filing of Defendants' proxy statement with the SEC. In addition, the meeting to evaluate the dissolution plan has not yet been scheduled. The March 21 letter, however, contains more advocacy than did the letter evaluated in *Smallwood.* It goes beyond reciting a generalized platitude, that the plan is in everybody's interest, to refer, albeit in general terms, to concerns about tax consequences of the dissolution

plan and self-dealing by the General Partner. In addition, despite the fact that the limited partners had not yet been provided copies of the proxy statement, the March 21 letter was followed by the June 9 press release which included a statement by Defendant Leonard Chill, the president of the Company,[3] praising the dissolution plan.

■ Therefore, under the *Capital Real Estate* test, Plaintiff has demonstrated likelihood of success on his claim that the March 21 letter was a proxy solicitation that did not comply with SEC regulations. Even under the *Smallwood* test, Plaintiff has raised serious questions about whether the March 21 letter constituted a proxy solicitation.

Defendants argue that even if the March 21 letter were a proxy solicitation, the failure to disclose certain information in the March 21 letter should be excused. The failure to disclose information is material only when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Defendants' argument is misplaced. As of yet, the only information that has been presented directly to the limited partners is the March 21 letter. Limited partners may also have learned through the media about the filing of the proxy statement with the SEC. On the basis of the current record, the Court cannot determine what the total mix of information before the limited partners will be at the time their proxies are sought.

2. The June 9 Press Release

■ Like the March 21 letter, the June 9 press release contained a mixture of neutrally presented information and favorable descriptions of the General Partner's plan. The release thus quoted Defendant Leonard Chill as proclaiming, "With this plan, we are delivering on our promise to enhance liquidity for limited partners ... while increasing the public float for common shareholders in a

---

**3.** Defendant Chill also manages the Limited Partnership. He is the sole director and stockholder of Chill Investments, which is the managing general partner of Synthetic Management, G.P., the sole general partner of the Limited Partnership.

non-dilutive manner." Luchenitser Decl., Ex. G.

Like the March 21 letter, the June 9 press release probably constitutes a proxy solicitation. Defendant Chill's statement made specific claims about the effects of the dissolution plan. The limited partners, however, had not been provided copies of the filed proxy statement. *See* 17 C.F.R. § 240.14a-3(a) (no solicitation may be made unless publicly-filed proxy statement is or already has been provided to person being solicited). Especially when viewed in light of the March 21 letter, the press release appears to be part of a continuous chain of communications designed to encourage the execution of proxies. Plaintiff has therefore demonstrated a likelihood that the June 9 press release violated SEC proxy statement regulations.

### B. Mootness

■ Defendants contend that the filing of their proxy statement with the SEC renders Plaintiff's claims moot. Although their filing does moot Plaintiff's demand that Defendants file a proxy statement with the SEC, it does not moot his other demands that Defendants: mail copies of the proxy statement to the limited partners, file the March 21 letter with the SEC, and file a corrective disclosure concerning the March 21 letter. In addition, the June 9 press release indicates that Defendants may continue to advocate on behalf of the dissolution plan without providing the limited partners with copies of a proxy statement filed in accordance with 17 C.F.R. § 240.14a-3(a). Plaintiff's motion for a preliminary injunction, therefore, is not moot.

Plaintiff has therefore demonstrated a bare likelihood of success on the merits of its claim that Defendants breached the SEC's requirement that they provide the limited partners with a proxy statements prior to, or at the same time as, any proxy solicitations.

### III. Balance of Harms

Upon showing likelihood of success on the merits, the moving party is entitled to injunctive relief if it establishes a possibility of irreparable harm. If the moving party has not established likelihood of success but has raised serious questions on the merits, it must demonstrate that the balance of hard-

ships tips sharply in its favor. *Rodeo Collection,* 812 F.2d at 1217.

■ As a general rule, a violation of the proxy rules constitutes irreparable injury because security holders are denied the ability to make investment decisions on the basis of adequate information. *Kaufman v. Cooper Companies, Inc.,* 719 F.Supp. 174, 178 (S.D.N.Y.1989); *Riggs Nat'l Bank v. Allbritton,* 516 F.Supp. 164, 181 (D.D.C.1981). Communications that are not accompanied or preceded by a proxy statement and that seek to predispose securities holders in favor of a particular decision may distort the decision-making process by convincing investors to support a particular course of action in the absence of complete information. *Smallwood,* 489 F.2d at 600; *Capital Real Estate,* 929 F.Supp. at 112. Courts, however, do not issue injunctions as a matter of course. In *Capital Real Estate,* the court denied a preliminary injunction despite a finding of likelihood of success on the merits. 929 F.Supp. at 116–17. Noting that the moving party had shown only a bare likelihood of success on the merits, the court denied a request for injunctive relief because the moving party's delay undercut its assertions of prejudice, the filing of proxy statements after the disputed press releases partially rectified the prior unlawful proxy solicitations, and the balance of hardships did not tip in either party's favor. *Id.* at 116.

■ Here, Plaintiff has established that Defendants made statements that are probably prohibited by SEC regulations. The solicitations, however, did not explicitly seek the support of the limited partners but did advise them that more details would be forthcoming. Plaintiff waited two months after the March 21 letter before filing this motion for a preliminary injunction. In addition, Defendants have now filed a proxy statement with the SEC. The Court is not aware of any communications concerning the dissolution plan that have occurred since the June press release. Defendants' proxy statement will be provided to all of the limited partners after it is approved by the SEC. Finally, no partnership meeting on the dissolution plan has yet been scheduled. Given the significant gaps in time between the March 21 letter, the

June 9 press release, and the as-yet-unscheduled partnership meeting, the Court can draw only a weak inference of prejudice to the decision-making process as a result of Defendants' possibly unlawful proxy solicitations.

Although an injunction that simply prohibited Defendants from advocating on behalf of the dissolution plan prior to the distribution of their proxy statement would impose only a slight burden on Defendants in terms of the cost and difficulty of compliance, it might unduly influence the decision-making process. The Court has found that Defendants probably made inappropriate statements concerning the dissolution plan, but it has not found that those statements were misleading or made with an unlawful intent. The issuance of a preliminary injunction might cause the limited partners to receive Defendants' future statements with undue suspicion and to receive Plaintiff's future statements with undue credence.

Because Plaintiff has made only a weak showing of harm and because issuance of a preliminary injunction might itself distort the decision-making process concerning the dissolution plan, the equities weigh against granting injunctive relief.

Although the Court finds that injunctive relief is not currently warranted, the equities in this case would be altered if, prior to distribution of a proxy statement, Defendants made additional statements concerning the dissolution plan that were not strictly neutral and informational.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED.