RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0313p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

VILLAGE OF OAKWOOD, BAUGHMAN TILE
COMPANY, GENE A. BAUGHMAN,
MARY ANN BAUGHMAN, GARY C. GRANT, Trustee,
and GARY C. GRANT INSURANCE AGENCY, INC.,
                    *Plaintiffs-Appellants,*

                    *v.*

STATE BANK AND TRUST COMPANY and FEDERAL
DEPOSIT INSURANCE CORPORATION,
                    *Defendants-Appellees.*

No. 07-4412

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 07-01736—James G. Carr, Chief District Judge.

Argued: August 1, 2008

Decided and Filed: August 22, 2008

Before: KENNEDY, GILMAN, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John C. Deal, WINKLER & WINKLER, Columbus, Ohio, for Appellants. Jaclyn C. Taner, FEDERAL DEPOSIT INSURANCE CORP., LEGAL DIVISION, Arlington, Virginia, Stephen A. Rothschild, SHUMAKER, LOOP & KENDRICK, Toledo, Ohio, for Appellees. **ON BRIEF:** John C. Deal, WINKLER & WINKLER, Columbus, Ohio, for Appellants. Jaclyn C. Taner, FEDERAL DEPOSIT INSURANCE CORP., LEGAL DIVISION, Arlington, Virginia, Stephen A. Rothschild, James H. O'Doherty, SHUMAKER, LOOP & KENDRICK, Toledo, Ohio, for Appellees.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. On February 1, 2002, the Oakwood Deposit Bank Company (Oakwood) failed. The Federal Deposit Insurance Corporation (FDIC) was immediately appointed as receiver. On the following day, the FDIC signed a Purchase and Assumption Agreement (P&A Agreement) with State Bank and Trust Company (State Bank) that caused the insured deposits of Oakwood to be transferred to State Bank. A group of partially uninsured

depositors (collectively referred to as the Uninsured Depositors) filed a complaint in state court against State Bank in an attempt to recover the value of their uninsured deposits.

The FDIC removed the case to federal district court. Despite a ruling on the merits by the district court, this court on appeal subsequently ordered that the judgment be vacated and the case remanded to the state court because the FDIC was not yet a party when it had sought removal. After remand, State Bank filed a third-party complaint against the FDIC, seeking indemnification under the terms of the P&A Agreement. The state court allowed the third-party complaint, following which the FDIC again removed the case to federal district court. State Bank and the FDIC then renewed their motions to dismiss the Uninsured Depositors' claims or for summary judgment, and the Uninsured Depositors once more filed a motion to remand.

The district court granted State Bank's and the FDIC's motions for summary judgment, finding that the Uninsured Depositors had failed to comply with the relevant statutory scheme for bringing their claims. It also denied the Uninsured Depositors' motion to remand, finding that federal jurisdiction was proper over the entire dispute. Those two decisions have been appealed by the Uninsured Depositors. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.     Factual background

This court aptly summarized the relevant facts of this case during the initial appeal:

> The day after Oakwood Deposit Bank Company (Oakwood) was placed in federal receivership, the FDIC, as receiver, entered into a purchase and assumption agreement for State Bank and Trust (State Bank) to take over Oakwood's insured deposits and some of its assets. Using the best information available at the time, the FDIC set at four million dollars the premium State Bank would pay for these assets (mostly loans) and liabilities (deposits). Two weeks later, the FDIC returned half of the four million dollar premium to State Bank because it had overvalued some of the assets transferred to State Bank. Further investigation of Oakwood's records disclosed that insured deposits were nearly sixty million dollars more than previously thought. These additional deposits were liabilities of the receivership, not State Bank.
>
> Village of Oakwood and a handful of individuals and businesses with deposits exceeding the FDIC's insurance limit, collectively the "uninsured depositors," filed suit in an Ohio court. Though the complaint alleged that the FDIC breached its fiduciary duty by not using the four million dollar premium to cover their losses, it named State Bank, rather than the FDIC, as defendant and alleged four Ohio causes of action: successor liability (State Bank being the successor of Oakwood), aiding and abetting the FDIC's breach of its fiduciary duty, equitable constructive trust, and "contract."

*Village of Oakwood v. State Bank & Trust Co.*, 481 F.3d 364, 366 (6th Cir. 2007).

The FDIC also alleged that, following the transfer of the insured deposits to State Bank, it issued receivership certificates for the portions of the accounts that exceeded the $100,000 insurance limit. Receivership certificates entitle the holder to a pro rata share of any remaining money

following the payment of secured creditors and administrative expenses. The FDIC, in its role as receiver, is entitled to the same pro rata share as the other holders of receivership certificates. At the time of briefing in this case, the FDIC's records reflected that the Uninsured Depositors had been paid dividends equal to 41% of their outstanding claims. Moreover, the FDIC states that further payments may be possible, although it offers no predictions as to the amount or the timing of such payments.

**B.          Procedural background**

The Uninsured Depositors filed their initial complaint against State Bank in the Ohio Court of Common Pleas in December of 2004. In the state court, the FDIC filed a motion to intervene and to be substituted for State Bank as the defendant. Before the motion to intervene was ruled on by the state court, the FDIC filed a notice of removal to the federal district court pursuant to 12 U.S.C. § 1819(b)(2)(B). The Uninsured Depositors subsequently filed a motion to remand.

Initially, the district court granted the Uninsured Depositors' motion. The court then reconsidered, granted the FDIC's motion to intervene, and ultimately granted summary judgment to State Bank and the FDIC. On appeal, this court reversed the judgment of the district court and remanded the case to the state court. Remand was necessary because the FDIC had removed the case before the state court had granted the FDIC's motion to intervene, a defect that was not cured by the district court's subsequent grant of the FDIC's motion to intervene in the federal proceedings. *Village of Oakwood*, 481 F.3d at 368.

Following the remand to the state court in June of 2007, State Bank filed a third-party complaint against the FDIC. State Bank sought indemnification from the FDIC on the basis of the P&A Agreement between them. After the state court accepted the third-party complaint, the FDIC again removed the case to federal district court, having now become a party to the lawsuit. State Bank and the FDIC once more moved to dismiss the Uninsured Depositors' claims or for summary judgment, and the Uninsured Depositors moved to remand the case to state court. While those motions were pending, the parties filed a report of their planning conference, wherein they agreed that the formation of a discovery plan was "premature until the pending dispositive motions have been ruled upon."

The district court, in October of 2007, denied the Uninsured Depositors' motion to remand and granted the motions of State Bank and the FDIC for summary judgment. This timely appeal followed.

## II. ANALYSIS

**A.          Standard of review**

We review de novo the denial of a motion to remand. *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). The party that removed the case to federal court bears the burden of establishing federal subject matter jurisdiction. *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453-54 (6th Cir. 1996).

We also review de novo a district court's grant of summary judgment. *Int'l Union v. Cummins*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B.     The district court's jurisdiction

As a preliminary matter, the Uninsured Depositors argue that the district court did not have jurisdiction over the case, and that it therefore incorrectly denied their motion to remand to the state court.  The Uninsured Depositors contend that exclusive jurisdiction over State Bank's third-party complaint lies in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491.  Accordingly, the Uninsured Depositors assert that the third-party complaint should have been dismissed and the case remanded to the state court.

State Bank and the FDIC argue in response that the Tucker Act does not provide the sole grant of federal jurisdiction to claims brought against the FDIC.  They contend that the Financial Institutions Reform Recovery and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183, which specifically governs the FDIC, provides a broad grant of jurisdiction pursuant to 12 U.S.C. § 1819 that is not preempted by the Tucker Act.  State Bank and the FDIC therefore contend that the Uninsured Depositors' motion to remand was properly denied.

The so-called Little Tucker Act, 28 U.S.C. § 1346, grants original jurisdiction to "[t]he district courts . . . , concurrent with the United States Court of Federal Claims, of . . . [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States."  But the Tucker Act itself grants exclusive jurisdiction to the Court of Federal Claims for contract claims against the United States that exceed $10,000.  *See Auction Co. of Am. v. FDIC*, 132 F.3d 746, 749 (D.C. Cir. 1997) ("*Auction Co. I*") ("For contract cases, the Little Tucker Act gives the district courts jurisdiction, concurrent with the Court of Federal Claims, if the amount sought is less than $10,000. If more than $10,000 is at issue, the suits lie only in the Court of Federal Claims under the Tucker Act proper.").  According to the Uninsured Depositors, the claims made by State Bank against the FDIC in the third-party complaint are, as a matter of law, contract claims against the United States that exceed $10,000.  They therefore argue that jurisdiction over the third-party complaint should lie exclusively in the Court of Federal Claims.

FIRREA, on the other hand, contains a broad waiver of sovereign immunity directly applicable to the FDIC, whereby that entity has the power to "sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal."  12 U.S.C. § 1819(a)(Fourth) (the "sue and be sued" clause).  The statute further provides that all civil suits in which the FDIC is a party "in any capacity . . . shall be deemed to arise under the laws of the United States" (the "deemer" clause), and that the FDIC has the power to "remove any action, suit, or proceeding from a State court to the appropriate United States district court."  12 U.S.C. § 1819(b)(2)(A) & (B).  As this court explained during the first appeal in this case, "[u]nder § 1819(b)(2), if a case or controversy includes *any* claim to which the FDIC is a party, the district court has jurisdiction over the entire case or controversy."  *Village of Oakwood*, 481 F.3d at 368 (emphasis in original).

The jurisdictional argument of State Bank and the FDIC, which is based on the language of FIRREA, is straightforward: the third-party claims against the FDIC "arise under the laws of the United States," and the FDIC properly exercised its power to "remove [the] action . . . from a State court to the appropriate United States district court."  12 U.S.C. § 1819(b)(2).  After this case was remanded to the state court as a result of the first appeal, State Bank filed its third-party complaint against the FDIC.  Thus the concern expressed during the first appeal of this case that "[t]he FDIC has not asserted any claims against a party, nor has any party asserted claims against the FDIC," is no longer relevant.  *Village of Oakwood*, 481 F.3d at 368-69.

The Uninsured Depositors respond by arguing that the caselaw from this and other circuits clearly indicates that the Tucker Act preempts FIRREA with respect to jurisdiction over contract

claims brought against the FDIC, so that State Bank's third-party complaint can be heard only by the Court of Federal Claims. According to the Uninsured Depositors, "[t]he law in three other circuits is that claims such as those in the Third-Party Complaint are, as a matter of law, claims against the United States and therefore belong in the Court of Federal Claims." Our own analysis of the relevant cases leads us to the opposite conclusion.

Neither State Bank nor the FDIC dispute the fact that claims against the FDIC can be considered claims against the United States, nor do they dispute that State Bank's claims against the FDIC are based on contract law. But these two undisputed facts do not answer the relevant question of whether the Tucker Act requires that all contract claims against the FDIC exceeding $10,000 be brought in the Court of Federal Claims, or whether FIRREA provides an alternative source of jurisdiction. A review of the cases cited by the parties demonstrates that the weight of authority lies in favor of concluding that the "sue and be sued" clause of FIRREA provides an alternative source of jurisdiction in cases such as the present one.

The D.C. Circuit squarely addressed this issue in *Auction Co. I*, a case that the Uninsured Depositors cite for the proposition that "[b]ecause the amount of State Bank's claim against the FDIC exceeds $10,000, it can only be brought in the Court of Federal Claims under the Tucker Act." In fact, however, the D.C. Circuit reached no such conclusion in *Auction Co. I*. That case involved a suit against the FDIC to enforce a contract that the Auction Company of America had made with the FDIC's statutory predecessor, the Resolution Trust Corporation (RTC). At issue was the determination of the proper statute of limitations for the suit against the RTC. The FDIC argued that the District of Columbia's three-year statute of limitations for the enforcement of contracts applied, while Auction Company contended that the six-year statute of limitations for suits against the United States was applicable.

Auction Company advanced a jurisdictional argument that is essentially identical to the position of State Bank and the FDIC in the present case. The D.C. Circuit explained that the case was "not a Tucker Act suit," and that

> Auction Company finds a waiver of sovereign immunity in FDIC's enabling legislation, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which empowers it to sue and be sued "in any court of law or equity, State or Federal." 12 U.S.C. § 1819(a) Fourth; *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 1014-15, 117 L.Ed.2d 181 (1992) (such clauses are broad waivers of immunity). And Auction Company finds subject matter jurisdiction in FIRREA's "deemer" clause, 12 U.S.C. § 1819(b)(2)(A), which provides (with an exception not relevant here) that all actions to which the FDIC is a party "shall be deemed to arise under the laws of the United States." District courts can thus hear these actions as part of the "arising under" jurisdiction granted by 28 U.S.C. § 1331.

*Auction Co. I*, 132 F.3d at 751. The D.C. Circuit adopted this argument, explicitly rejecting the contention (presently advanced by the Uninsured Depositors) that the Tucker Act requires suits such as the third-party complaint by State Bank to be filed in the Court of Federal Claims. *Id.* at 751-52.

In declining to adopt the FDIC's argument that a distinction should be drawn between suits against governmental agencies and suits against the United States, the *Auction Co. I* court noted that

> [d]istinguishing between suits against agencies and those against the United States would frequently be necessary if Tucker Act

> jurisdiction were preemptive—that is, if Tucker Act jurisdiction by its mere existence barred jurisdiction granted by another statute. It does not. If a separate waiver of sovereign immunity and grant of jurisdiction exist, district courts may hear cases over which, under the Tucker Act alone, the Court of Federal Claims would have exclusive jurisdiction.

*Id.* at 752 n.4.

> We conclude, as did the *Auction Co. I* court, that

> > [a]s a consequence of the different waivers of immunity available, plaintiffs suing the FDIC have a fairly wide choice of forum, at least if they sue in contract. They may bring suit in the Court of Federal Claims, if they have a Tucker Act suit for more than $10,000; they may bring a Tucker Act suit for a lesser amount in either the Court of Federal Claims or a district court; and they may sue in any court of law or equity under the FDIC sue-or-be-sued clause.

*Id.* at 753.

The Uninsured Depositors' reliance on *Auction Co. of America v. FDIC*, 141 F.3d 1198 (D.C. Cir. 1998) ("*Auction Co. II*"), is also misplaced. According to their argument, *Auction Co. II* stands for the proposition that the "FDIC as receiver counts as the United States for Tucker Act purposes." Although the D.C. Circuit in *Auction Co. II* indeed reached this conclusion, it did so in the broad context of revisiting the jurisdictional issues that were first addressed in *Auction Co. I.* The court said that the FDIC counts as the United States for purposes of the Tucker Act, but went on to explain that this fact "does not, standing alone, establish Tucker Act jurisdiction over the FDIC as Receiver." *Auction Co. II*, 141 F.3d at 1199. Moreover, the court reiterated the jurisdictional holding of *Auction Co. I*, which "looked to the FDIC's sue-or-be-sued clause for a waiver of immunity and found subject matter jurisdiction based on [FIRREA]." *Id.* Both *Auction Co. I* and *Auction Co. II*, therefore, support the argument of State Bank and the FDIC that FIRREA provides an independent jurisdictional basis for claims against the FDIC.

Interestingly enough, the Federal Circuit itself has endorsed the jurisdictional argument advanced by State Bank and the FDIC. In *Far West Federal Bank, S.B. v. Director, Office of Thrift Supervision*, 930 F.2d 883 (Fed. Cir. 1991), the FDIC was the party presenting the argument now advanced by the Uninsured Depositors that "Congress in the Tucker Act showed its intention to exclude contract claims from 'sue and be sued' clauses." *Id.* at 889. But the court rejected the FDIC's argument. It explained that "[t]his position is contravened by the variety of contract-related claims for monetary relief which have been brought under 'sue and be sued' clauses." *Id.* The court cautioned against finding implied restrictions on "sue and be sued" clauses because the clauses "reflect[] congressional intention that judicial remedy not be withheld when governmental agencies enter into transactions with the public." *Id.* at 888.

"'Sue and be sued' clauses in an agency's enabling legislation are correctly viewed as coextensive with the statutory assignment of the agency, absent a specific restriction to the contrary." *Id.* at 889. Ultimately, the Federal Circuit concluded that the district court had jurisdiction over the plaintiffs' claims for rescission and restitution (both contract-law claims). *Id.*; *see also Karstens Prods., Inc. v. FDIC*, 74 F.3d 1258 (Table), 1995 WL 769019, at *3 (Fed. Cir. Dec. 19, 1995) (relying on *Far West* in holding that "FIRREA's 'sue and be sued' clause constitutes a waiver of immunity over a district court suit involving money damages on a contractual claim").

The Tenth Circuit is the only circuit that initially adopted the argument that the Tucker Act provides the sole grant of jurisdiction over contract claims against the FDIC. In *Farha v. FDIC*, 963 F.2d 283 (10th Cir. 1992), the court affirmed the district court's conclusion that it did not have jurisdiction over the plaintiff's implied-in-fact contract claim because "[t]he United States Claims Court has exclusive jurisdiction over contract actions where the amount in controversy exceeds $10,000." *Id.* at 288. This conclusion was reached without any analysis of the potential jurisdiction over the claim under the "sue and be sued" clause of FIRREA, despite the plaintiff's argument that he was seeking jurisdiction pursuant to that clause.

The holding in *Farha*, however, was effectively overruled two years later in *FDIC v. Hulsey*, 22 F.3d 1472 (10th Cir. 1994). In *Hulsey*, the court relied in part on *Far West* to conclude that the "sue and be sued" clause "constitutes a waiver of sovereign immunity for contract claims against the FDIC." *Id.* at 1480. The court acknowledged *Farha*'s holding "that the Claims Court has exclusive jurisdiction over contract actions against the FDIC where the amount in controversy exceeds $10,000." *Id.* at 1481. But it also "observe[d] that *Farha* did not consider, nor did it discuss, the exception found within the 'sue and be sued' clause of FIRREA." *Id.* In an analysis that closely mirrored that undertaken by the D.C. Circuit and the Federal Circuit, the Tenth Circuit in *Hulsey* held that the claims at issue in *Farha*, which were "in the form of counterclaims based on contract[,] . . . fall within the 'sue and be sued' clause of FIRREA." *Id.*

The Uninsured Depositors next contend that this court's decision in *Campanella v. Commerce Exchange Bank*, 137 F.3d 885 (6th Cir. 1998), controls the jurisdictional issue here. In *Campanella*, we affirmed the district court's determination that it lacked subject matter jurisdiction over a contract claim against the Small Business Administration (SBA) despite a "sue and be sued" clause in the SBA's statutory framework. *Id.* at 891. The court concluded that the Contract Disputes Act (CDA) grants exclusive jurisdiction to the Court of Federal Claims for contract claims exceeding $10,000 brought against "executive agencies." *Id.* at 890-91. But the FDIC is not an "executive agency" as defined in 41 U.S.C. § 601(2), which includes "wholly owned Government corporation[s]" as defined by 31 U.S.C. § 9101(3). Rather, the FDIC is designated as a "mixed-ownership Government corporation" in 31 U.S.C. § 9101(2).

Moreover, the CDA "purports to provide final and exclusive resolution of all disputes arising from government contracts covered by the statute," and it is the "paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions." *Campanella*, 137 F.3d at 891 (quoting *Brown v. GSA*, 425 U.S. 820, 834 (1976)). The Uninsured Depositors have made no attempt to argue that the Tucker Act similarly "purports to provide final and exclusive resolution" of all contract claims against the FDIC or that it is "the paradigm of a 'precisely drawn, detailed statute.'"

In the present case, FIRREA is the precisely drawn, detailed statute with regard to the FDIC, and the Tucker Act is essentially the paradigm of a general jurisdictional provision, granting jurisdiction to the Court of Federal Claims over all "claim[s] against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Given the fact that *Campanella* involved a statutory framework that is inapplicable to the instant action, that case does not demonstrate that this court has already rejected the jurisdiction argument of State Bank and the FDIC.

The Uninsured Depositors have raised one other rather complicated and confusing argument regarding the district court's jurisdiction. Essentially, the Uninsured Depositors contend that the district court concluded that FIRREA deprived the state court of jurisdiction, so "the District Court should have dismissed State Bank's third-party claims against the FDIC and remanded the case to

state court." The Uninsured Depositors read the following excerpt from the district court's order as indicative of this conclusion:

> In addition to pursuing claims via the administrative process, claimants can "file suit on such claim . . . in the district . . . court . . . ." 12 U.S.C. § 1821(d)(6)(A)(ii). Thus, nothing would have stopped the plaintiffs—on discovering (if it is indeed the case) that they could not obtain redress via administrative proceedings—from filing suit in district court as allowed under § 1821(d)(6).

With due respect to the Uninsured Depositors, this excerpt cannot be plausibly read as a conclusion that the state court lacked jurisdiction over the dispute. In fact, neither the parties nor the district court have previously asserted that the state court lacked jurisdiction. The relevant issue in addressing the Uninsured Depositors' motion to remand is whether the *federal district court* had jurisdiction. That issue can be resolved without any analysis of the potential jurisdiction of the state court.

The Uninsured Depositors' reliance on *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006), for the proposition that "[w]hether a federal statute precludes jurisdiction in state court is for the state court to determine on remand" is also misplaced. Tellingly, the Uninsured Depositors have not provided a pinpoint citation, nor quoted any language from the *Kircher* opinion, to support their argument. *Kircher* is in fact not relevant to this case. The Supreme Court in *Kircher* addressed the scope of federal appellate jurisdiction over a district court's decision to remand a case to the state court based on a lack of subject matter jurisdiction. 547 U.S. at 635-36 (explaining that the question in the case was "whether an order remanding a case removed under the Securities Litigation Uniform Standards Act of 1998 is appealable," notwithstanding the general statutory prohibition against appellate review "of a district court order remanding a case from federal to state court").

The *Kircher* Court did not have occasion to make the ruling that the Uninsured Depositors contend was made in that case because neither the district court nor the Seventh Circuit had concluded that a federal statute precluded the state court's jurisdiction. Rather, the district court had decided that there was no federal subject matter jurisdiction, and the Seventh Circuit concluded that it could review that decision. The Supreme Court reversed the Seventh Circuit because the district court's decision was purely jurisdictional and therefore unreviewable. *Id.* at 644 ("The work done is jurisdictional, as is the conclusion reached and the order implementing it." (footnote omitted)).

In the only part of the opinion that comes close to addressing the Uninsured Depositors' present jurisdictional argument, the Supreme Court discussed the ramifications of its decision on the federal courts' jurisdiction over whether federal statutes preclude state-court action regarding particular claims. Even if the Uninsured Depositors are arguing that FIRREA has a preclusive effect over actions in state court (an argument that they do not explicitly make), the *Kircher* Court explained that

> a district court does not have the last word on preclusion under the Act, for nothing in the Act gives the federal courts exclusive jurisdiction over preclusion decisions. A covered action is removable if it is precluded, and a defendant can enlist the Federal Judiciary to decide preclusion, but a defendant can elect to leave a case where the plaintiff filed it and trust the state court (an equally competent body) to make the preclusion determination.

*Id.* at 646 (citation omitted).

Nothing in the above discussion, however, requires the conclusion urged by the Uninsured Depositors—that district courts are required to remand to state courts for preclusion determinations. The holding of the district court in the present case was not based on a purported lack of jurisdiction by the state court, and even if it had been, *Kircher* makes clear that such a determination can be made by either a federal or a state court. We thus conclude that the district court had jurisdiction over the entire case.

## C.        Motions by State Bank and the FDIC for summary judgment

Turning now to the merits of the case, the Uninsured Depositors argue that even if jurisdiction was proper in the district court, the court's grant of summary judgment to State Bank and the FDIC was improper for three reasons. According to the Uninsured Depositors, the district court erred by (1) granting summary judgment before discovery was completed, (2) applying FIRREA's administrative process to the claims against State Bank, and (3) failing to properly apply Ohio state law to the Uninsured Depositors' claims. Each of these arguments will be addressed in turn.

### 1.        *Lack of discovery*

The Uninsured Depositors argue that they "were denied discovery" and that the district court therefore erred in granting summary judgment to State Bank and the FDIC. In response, State Bank and the FDIC contend that the Uninsured Depositors waived this argument by failing to file a motion in the district court for additional discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Moreover, the Uninsured Depositors agreed—in the report of the parties' planning conference—that a discovery plan would be "premature until the pending dispositive motions have been ruled upon."

The Uninsured Depositors' argument on this issue is presented in one sentence, with a citation to only two inapposite Second Circuit cases. One of those cases is *Long Island Lighting Co. v. Barbash*, 779 F.2d 793 (2d Cir. 1985), where the Second Circuit reversed the district court's grant of summary judgment because "the district court abused its discretion when it cut off discovery suddenly." *Id.* at 795. The district court had required the plaintiff to examine a witness under oath at a hearing "without notice or an opportunity to review . . . documents that had just been produced." *Id.* Moreover, the court "improperly circumscribed counsel's questions . . . when it denied counsel's requests to question anyone other than [the witness]." *Id.* On the basis of these actions, the Second Circuit concluded that the plaintiff "was denied a meaningful opportunity to establish" the elements of its claim. *Id.* There have been no allegations of any such improper actions on the part of the district court in the present case.

The other case cited by the Uninsured Depositors, *Landmark Land Co. v. Sprague*, 701 F.2d 1065 (2d Cir. 1983), is equally inapplicable. In *Landmark Land*, the Second Circuit noted that "[b]ecause summary judgment was granted before any significant discovery took place, we are left in much uncertainty as to the events which gave rise to this litigation." *Id.* at 1068. Yet the court did not conclude that the district court had erred for that reason. Instead, the Second Circuit reversed the district court because, on the basis of the parties' submissions, the court determined that there was a genuine issue of material fact that made summary judgment improper. *Id. Landmark Land*, therefore, does not stand for the proposition advocated by the Uninsured Depositors—that a grant of summary judgment prior to the completion of discovery is improper as a matter of law.

More importantly, however, the Uninsured Depositors had agreed that discovery was unnecessary to rule on the motions now on appeal when the parties filed with the district court the report of their planning conference. At no time did the Uninsured Depositors file a Rule 56(f) motion to inform the district court that additional discovery was needed. This court has previously held that such a motion "is necessary in order to 'preserve the argument that the grant of summary

judgment was too hasty and precluded necessary discovery.'" *Compuware Corp. v. Bahn*, 107 F. App'x 528, 530 (6th Cir. 2004) (quoting *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995)). Accordingly, we conclude that the Uninsured Depositors have waived the argument that they were improperly denied discovery by the district court.

### 2.       *FIRREA's administrative-claims procedure*

The district court concluded that the Uninsured Depositors' claims were barred by the administrative process outlined in 12 U.S.C. § 1821(d), which sets forth the procedure under FIRREA for making claims against the FDIC. Although the court recognized that the Uninsured Depositors actually brought their claims solely against State Bank rather than against the FDIC, it concluded that the same statutory framework prohibited the Uninsured Depositors "from bringing the same claims against State Bank."

The district court engaged in a thorough analysis of § 1821(d) and determined that the Uninsured Depositors' failure to comply with the administrative process prevented them from bringing the instant action. We agree with that analysis. FIRREA's administrative-claims process has been succinctly summarized as follows:

> Upon its appointment as receiver, FDIC is required to publish notice that the failed institution's creditors must file claims with FDIC by a specified date not less than ninety days after the date of publication. 12 U.S.C. § 1821(d)(3)(B). FDIC is also required to mail notice to all known creditors of the failed institution. [12 U.S.C.] § 1821(d)(3)(C). It has 180 days from the date of filing to allow or disallow claims. [12 U.S.C.] § 1821(d)(5)(A)(i). Claimants have sixty days from the date of disallowance, or from the expiration of the 180-day administrative decision deadline, within which to seek judicial review in an appropriate United States district court. [12 U.S.C.] § 1821(d)(6)(A).

*Simon v. FDIC*, 48 F.3d 53, 56 (1st Cir. 1995) (alterations added).

Section 1821(d) clearly establishes a process for the administrative review of "any claim against a depository institution for which the Corporation is receiver." 12 U.S.C. § 1821(d)(6)(A)(i). Pursuant to § 1821(d)(6)(B)(ii), if a party fails to comply with the statutory time limitations, any claim that a party has "shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim."

Section 1821(d) also contains an explicit subsection titled "Limitation of judicial review." The pertinent subsection reads as follows:

> (D) Limitation of judicial review
>
> Except as otherwise provided in [§ 1821(d)], no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). This court, in the initial appeal of this action, noted its "skepticism that the uninsured depositors' claims can survive FIRREA's bar against courts adjudicating 'any claim relating to any act or omission of . . . the Corporation as receiver.'" *Village of Oakwood*, 481 F.3d at 369.

Other courts have recognized a tension between § 1821(d)(6)(A)'s process for reviewing claims that are "against a depository institution" and the broad prohibition against judicial review of "any claim relating to any act or omission of . . . the Corporation as receiver" found in § 1821(d)(13)(D)(ii). As the D.C. Circuit explained in *Auction Co. II*,

> for claims that are not "against a depository institution" but that do fall within (d)(13)(D), the effect of the two sections, on a plain language approach, would be not to impose an administrative exhaustion requirement but to foreclose judicial jurisdiction altogether, a result troubling from a constitutional perspective and certainly not the goal of FIRREA.

*Auction Co. II*, 141 F.3d at 1200.

In order to resolve this ambiguity, every court that has addressed the issue has interpreted § 1821(d)(13)(D) "as imposing a statutory exhaustion requirement rather than an absolute bar to jurisdiction." *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 763 (5th Cir. 1996); *see also Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995) ("The effect of these provisions, read together, is to require anyone bringing a claim against or 'seeking a determination of rights with respect to' the assets of a failed bank held by the FDIC as receiver to first exhaust administrative remedies by filing an administrative claim under the FDIC's administrative claims process."); *Hudson United Bank v. Chase Manhattan Bank of Conn.*, 43 F.3d 843, 849-50 (3d Cir. 1994) ("By deciding the administrative claims procedure and the jurisdictional bar have concurrent scope, we avoid the possibility . . . that § 1821(d)(13)(D) could become 'an independent and outright bar of jurisdiction' rather than a mere exhaustion requirement . . . ."); *Brady Dev. Co., v. Resolution Trust Corp.*, 14 F.3d 998, 1003 (4th Cir. 1994) ("The precise jurisdictional limitations on the Article III courts mandated by FIRREA are determined by reading section 1821(d)(13) in conjunction with the statute's allowance of an action within sixty days of a claim being denied as provided for in section 1821(d)(6)(A)."); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 484 (8th Cir. 1993) ("Every court that has considered the issue has found exhaustion of FIRREA's administrative remedies to be a jurisdictional prerequisite to suit in district court."). We now join our sister circuits in adopting this approach, which means that the Uninsured Depositors' failure to file an administrative claim within the period provided by § 1821(d)(6) results in their having "no further rights or remedies with respect to such claim[s]" pursuant to § 1821(d)(6)(B)(ii).

The Uninsured Depositors concede that they failed to comply with the administrative-claims process outlined in FIRREA. But they raise three arguments on appeal regarding the district court's determination that by failing to pursue their claims through the administrative process, they are barred from seeking relief in federal court. These three arguments are presented in a total of two paragraphs from the Uninsured Depositors' brief and are accompanied by only three case citations.

First, the Uninsured Depositors contend that their claims against State Bank were not "'claim[s] against a depository institution for which the [FDIC was] receiver,' under 12 U.S.C. § 1821(d)(6)." This naked assertion appears to be an argument that because the Uninsured Depositors have sued only State Bank, rather than the FDIC, their claims fall completely outside of

the framework of FIRREA's administrative process. The problem with this novel argument is that all of their claims against State Bank are directly related to acts or omissions of the FDIC as the receiver of Oakwood. As the district court explained, accepting the Uninsured Depositors argument and "permit[ting] claimants to avoid [the] provisions of (d)(6) and (d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid." *See Brady Dev. Co.*, 14 F.3d at 1002-03 (describing the goal of FIRREA as providing "'funds from public and private sources to deal expeditiously' with faltering and failed savings and loans"). Moreover, because the claims that the Uninsured Depositors are attempting to assert are disallowed as a result of their failure to comply with the administrative-claims process, they "have no further rights or remedies with respect to such claim[s]" despite the fact that they purport to bring them against State Bank rather than the FDIC. *See* 12 U.S.C. § 1821(d)(6)(B)(ii).

The Uninsured Depositors' last two arguments relate to what they consider precedents indicating that "[o]ther courts agree that the jurisdictional bar in 12 U.S.C. § 1821(d)(13)(D) does not apply." They claim that *Ambase Corp. v. United States*, 61 Fed. Cl. 794, 798 (Fed. Cl. 2004), stands for the proposition that "Section 1821(d) of Title 12 U.S.C. would not bar State Bank's or the Uninsured Depositors' claims if they had been asserted in the United States Court of Federal Claims." *Ambase*, however, involved a putative shareholder derivative suit that was brought directly against the United States, a suit that the FDIC joined as an intervenor-plaintiff. In rejecting the FDIC's argument that § 1821(d)(13)(D) barred review of "its management of a receivership," the *Ambase* court explained that "the claim was not *against* the receivership, but rather against the United States for breach of a goodwill contract." 61 Fed. Cl. at 799 (emphasis in original). The Uninsured Depositors' claims here, however, are not against the United States, but instead arise directly out of the acts and omissions of the FDIC as receiver for Oakwood. This distinction renders *Ambase* inapposite to the present case.

The Uninsured Depositors' final argument, based on decisions from the Tenth Circuit and the Eastern District of Michigan, is that § 1821(d)(13)(D) does not preclude the review of claims arising out of actions taken by the FDIC *after* it has taken over a depository institution. In *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269 (10th Cir. 1994), the Tenth Circuit held that the administrative-claims process applied only to "creditor and related claims arising before an institution enters receivership." *Id.* at 1274. The court explained that "claims such as [the plaintiff's] arising after receivership and in the indeterminate future due to management actions of the [receiver] cannot have been contemplated when [the] deadlines for filing administrative claims were set."

Relying on *Homeland Stores*, the United States District Court for the Eastern District of Michigan concluded "that the administrative process of § 1821 does not cover claims that arise after receivership from the independent acts of the governmental agency." *Lopez-Flores v. Resolution Trust Corp.*, 93 F. Supp. 2d 834, 849 (E.D. Mich. 2000). But the court in *Lopez-Flores* relied on the fact that "by the time Lopez-Flores's claim had accrued, the ninety day period had expired." *Id.* at 845. No such problem exists in the present case, where the Uninsured Depositors' claims accrued upon the consummation of the P&A Agreement.

Moreover, the above two cases appear to be the only ones to reach this particular conclusion. The overwhelming majority of courts to address the issue have concluded that the administrative process applies to post-receivership claims. In fact, this court has explained that § 1821(d)(13)(D) "precludes a court from *acquiring* jurisdiction *after* the receiver is appointed," but that § 1821(d)(6) provides an exception to that rule for "claim[s] disallowed by the receiver through the administrative claim process." *In re Lewis*, 398 F.3d 735, 744 (6th Cir. 2005) (emphasis in original); *see also McCarthy v. FDIC*, 348 F.3d 1075, 1081 (9th Cir. 2003) (joining "the majority of courts in holding that claimants . . . who challenge conduct by the FDIC as receiver, must exhaust administrative remedies before seeking judicial review"); *Stamm v. Paul*, 121 F.3d 635, 639-42 (11th Cir. 1997)

(interpreting §1821(d)(6) as providing an administrative basis to review post-receivership claims based on the receiver's actions); *Home Capital Collateral, Inc.*, 96 F.3d at 763-64 (holding that FIRREA's exhaustion requirement applies to claims arising post-receivership based on actions of the receiver); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 393-94 (3d Cir. 1991) (concluding that claims against the receiver fall within the language of § 1821(d)(13)(D)(i)); *Ladd v. Second Nat. Bank of Warren*, 941 F.Supp. 87, 91 (N.D. Ohio 1996) (dismissing post-receivership claims for failure to initiate the administrative process); *Holmes Fin. Assocs. v. Resolution Trust Corp.*, 33 F.3d 561, 563 n.1 (6th Cir. 1994) (citing *Rosa*'s "post-receivership claim" in observing that courts have unanimously inferred the existence of an exhaustion requirement under FIRREA).

Ultimately, the Uninsured Depositors failed to comply with the clearly delineated procedure for seeking review of their claims arising out of the collapse of Oakwood. We thus have no need to address the substance of these disallowed claims for successor liability, aiding and abetting a breach of fiduciary duty, constructive trust, and breach of contract.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.