**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0628n.06

**No. 09-1383**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Sep 28, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ALLEN DOTSON; EDDIE CITCHEN; MARK JARVIS; KENNETH OAKLEY; CARLTON REEVES and STEVEN ZENKER, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| ARKEMA, INC., | ) ) | |
| Defendant-Appellee. | ) | |

Before: RYAN, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. Six former Arkema, Inc. employees (Plaintiffs) sued Arkema, complaining that it denied them separation pay in violation of the Employee Retirement Income Security Act (ERISA). The district court granted summary judgment in favor of Arkema, finding that their union's release of its members' ERISA claims barred Plaintiffs' suit. We affirm.

I.

Appellee Arkema operated a chemical plant in Riverview, Michigan. Plaintiffs were unionized employees represented by United Steelworkers, Local 2-591 ("Union"). In 2006, Arkema offered a severance package to eligible workers, with the aim of eliminating 46 bargaining-unit

positions ("Separation Agreement"). The Separation Agreement did not specify how long the severance-package offer would remain open, but stated that the reductions would be completed by the end of 2006. Later emails set deadlines—including a final deadline of May 26, 2006—for employees to agree to separate from their employment in exchange for the severance benefits. Due to a dispute over the calculation of pension benefits, Plaintiffs did not agree to separate from their employment prior to the deadline.

The offered Separation Agreement provided that employees 53 and over were "permitted to accrue two additional years of age, but not service in the Arkema Inc. Retirement Plan." R. 18, ex. 2 at ¶(7). Arkema initially took the position that the additional years did not accrue immediately, and the Union filed a grievance.[1] Plaintiffs declined to accept the severance package while this accrual issue remained unresolved, believing that accepting the severance package would release their accrual-based claims. R. 25 exs. 2-8. On April 19, 2007, an arbitrator resolved the grievance in favor of the Union. Arkema sold the Riverview plant on May 1, 2007. Within a few weeks of the sale, the Union agreed to release Arkema from claims arising out of the Collective Bargaining Agreement in exchange for settling various pending grievances and arbitrations ("Release"). R. 24 ex. 4. The Release specifically waived claims relating to violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, stating, in relevant part:

> the Union discharges and releases [Arkema] of and from all claims, [and] causes of
> action . . . arising . . . up until the date of this Agreement . . . that the Union might

---

[1]Plaintiffs participated in the grievance process.

> have, or could have, against the Company, including by way of example, all Claims in any way arising from or relating to: the sale of the Riverview Plant; . . . violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 <u>et seq.</u>, or regulations promulgated pursuant thereto, (except this ERISA waiver does not apply to prospective claims, only to claims that could have been brought up to the date of the agreement).

*Id.* at ¶5.  It was at this point—after the sale of the plant and the Union's release of claims against Arkema—that Plaintiffs sought to accept the severance package outlined in the Separation Agreement.  Arkema refused to provide them with severance pay.

On July 21, 2008, plaintiffs filed suit, alleging breach of fiduciary duty under ERISA as well as several state-law claims.  Arkema moved to dismiss, contending that the Separation Agreement was not an ERISA plan.  The district court decided that the Separation Agreement was an ERISA plan and denied Arkema's motion to dismiss.  It then dismissed the state-law claims as preempted by ERISA.  Following dismissal of the state-law claims, Plaintiffs amended their complaint, reasserting the breach of fiduciary duty claim and adding a claim for denial of benefits under ERISA.  Plaintiffs maintain that Arkema breached its duty "when it misrepresented to the [plaintiffs] . . . or concealed the fact that they had to resign before December 31, 2006 to be eligible for severance pay and that they were not eligible for two additional years for the pension plan." R. 4, Amended Complaint at 4, ¶19.  They also claim entitlement to severance pay following the sale of the plant. *Id.* at ¶¶21-30.

Arkema moved for summary judgment, contending, in part, that the Release prevented plaintiffs from bringing a claim under ERISA.  R. 23 at 3-4.  Plaintiffs responded that the Release

only barred the Union's claims, not the claims of individual employees. R. 25 at 7-8. Neither party addressed whether the Union could release the claims in question. The district court sided with Arkmea, granting it summary judgment on the grounds that the Union had released Plaintiffs' claims. Plaintiffs timely appealed.

II.

We review a district court's grant of summary judgment de novo, affirming if the facts, taken in a light most favorable to the Plaintiffs, demonstrate that "no genuine issue of material fact exists and [Arkema] is entitled to judgment as a matter of law." *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008).

Plaintiffs first argue that a union contract may not waive ERISA claims as a matter of law, thereby rendering the Release ineffective. But, as the district court explicitly noted, Plaintiffs failed to raise this waiver argument below, *Dotson v. Arkema Inc.*, No. 08-CV-13118, 2009 WL 499149, at *4 n.5. (E.D. Mich. Feb. 26, 2009) ("neither party argues that ERISA claims are not, as a general matter, subject to waiver by a union on behalf of its members"), and we deem it forfeited, *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194 (6th Cir. 1992) (we "will not address issues on appeal that were not raised and ruled upon below" in the absence of exceptional circumstances).

Plaintiffs argue alternatively that the contract does not clearly state whether the Release binds only the Union *or* both the Union and its members, making summary judgment improper. When interpreting ERISA plans, we apply federal common law rules of contract interpretation and give

effect to the unambiguous terms of the plan. *Univ. Hosps. of Cleveland v. S. Lorain Merch. Ass'n, Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006). "Federal law controls the validity of a release of a federal cause of action." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir.1989). Contrary to Plaintiffs' argument, the Release clearly and unambiguously binds individual bargaining unit employees, as well as the Union. The Release defines the parties to the agreement as Arkema and the Union, "on behalf of the employees of [Arkema] hereinafter specified," and provides that the phrase "employees of [Arkema] hereinafter specified" includes "employees of the plant" and the "bargaining unit and the affected employees." In light of this language, we agree with the district court that the term "union," as used throughout the contract, encompasses individual bargaining unit employees (i.e., Plaintiffs). Indeed, to construe the Release as Plaintiffs suggest would render the phrase "on behalf of the employees" superfluous. Moreover, as noted by the district court, paragraph six excludes certain types of individual bargaining unit employees' suits from the Release, further evincing that the parties contemplated suits brought by individual bargaining unit employees and undercutting Plaintiffs' suggested interpretation.

Finally, Plaintiffs allege that the Release fails to comply with the federal requirement that a waiver of statutorily protected rights be "clear and unmistakable." *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983). Again, we disagree. The Release specifically releases "all Claims in any way arising from, or relating to: the sale of the Riverview Plant; alleged violations of the collective bargaining agreement . . . [and] violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001."

III.

For these reasons, we affirm.

No. 09-1383
*Dotson v. Arkema, Inc.*

**HELENE N. WHITE, Circuit Judge** (concurring in part and dissenting in part).

I agree that Plaintiffs waived any argument that the Union is unable to waive the ERISA rights of its members. I respectfully dissent, however, from the majority's conclusion that the Release clearly and unambiguously releases the claims of the individual Plaintiffs as well as the Union. The prefatory language that the Agreement "is between Arkema, Inc., . . . the United Steelworkers, and its affiliated Local 2-591 (hereinafter referred to as the Union), on behalf of the employees of the Company hereinafter specified" simply states that the Union is representing the interests of the employees.

The language of the Release states:

> In consideration of items set forth in Section 4 above, *the Union discharges and releases the Company of and from all claims*, causes of actions, unfair labor practice charges, grievances, arbitrations, dues, sums of money, attorneys' fees and costs, accounts, contracts, torts, agreements, promises, damages, judgments, rights, demands, or otherwise ("Claims"), known or unknown, in law or equity, accrued or unaccrued, contingent or non-contingent, whenever arising from the beginning of time up until the date of this Agreement, whether common law or statutory, *that the Union in any way might have, or could have, against the Company*, including by way of example, all claims in any way arising from, or relating to: the sale of the Riverview Plant; alleged violations of the collective bargaining agreement . . . violations of the National Labor Relations Act, . . . violations of the Labor Management Relations Act, . . . violations of the Employee Retirement Income Security Act, . . . or regulations promulgated pursuant thereto, (except this ERISA waiver does not apply to prospective claims, only to claims that could have been brought up to the date of the Agreement); violations of the Worker Adjustment and Retraining Notification Act, . . .

[Emphasis added.] The Release language states that the Union is discharging and releasing the

- 7 -

Company from any claims the Union might have. It does not purport to release employees' individual claims.

Further, paragraph 9 acknowledges that the Release resolves "all issues between the Union and the Company."

Nor do I view paragraph 6 as providing unambiguously that all individual claims not excluded are released. Paragraph 6 makes clear that in waiving all claims based on the labor contracts between the parties, and in settling, pursuant to the Release, the grievances detailed in the Appendices, which include grievances based on Arkema's interpretation of the Severance Agreement, the parties did not intend to affect the vested pension rights of any of the employees, and nothing in the Release is intended to bar the pursuit of such a claim. Paragraph 6 is intended to eliminate any doubt regarding the release of certain individual claims; it does not affirmatively waive other claims.

It may well be that certain individual claims so overlap Union claims that they can only be seen as having been released. These ERISA claims are not of that nature, and the Release Agreement is at best ambiguous regarding the release of these claims.

I would reverse and remand for further proceedings.